We'll hear argument next this morning in Case 13-1352, Ohio v. Clark. Mr. Meyer. Thank you, Mr. Chief Justice, and may it please the court. In cases of foul acts done in secret where the child is the party injured, the repelling of their evidence entirely is in some measure denying them the protection of the law. That 254-year-old passage, I think, quite accurately predicts the situation we find ourselves in in Ohio. Following the decision of the Ohio Supreme Court in this case, we believe misapplying the Sixth Amendment Confrontation Clause to these facts. We believe the Ohio Supreme Court erred in two fundamental ways. First, when it held that private parties who are acting with no police involvement by virtue of their mandatory reporter status are transformed into law enforcement agents or agents of the government for purposes of the Confrontation Clause analysis. Do you have to be an agent of the government for the Confrontation Clause to kick in? Based on this Court's post-Crawford decisions, we believe that that is the primary analysis that should be conducted. Not primary. I'm asking is it exclusive, that no person who's not an agent of the government can trigger a Confrontation Clause protection? I mean, that's clearly not true. I mean, you can have a cross-examination in a civil case. A lawyer in a civil case has somebody on the stand. Well, in a civil case, I would agree that that is testimonial evidence, but purely private people. That's a private person. Well, in a civil case, Your Honor, I believe that official solemnity that attaches to the oath that a witness is taking and understanding. Well, it's a question of solemnity. But solemnity has nothing to do with whether you're a civilian or a policeman. Well, going back to Crawford itself, and what this Court explained was the purpose behind the Sixth Amendment when the Framers adopted it was to prevent a very specific kind of abuse, and that's government agents who are investigating crimes for purposes of a criminal prosecution. And when you reduce it to the level of a 3-1⁄2-year-old child talking to his daycare teacher, I would submit that that is far removed. Isn't the test whether the statement is intended to be testimonial in nature? Yes, Justice Sotomayor. So whether it's given to a private individual or a police officer is irrelevant. The question is, was it intended to substitute for testimony, to be used later? That is the test that this Court has announced in Davis, certainly. But we have submitted, I think, perhaps a threshold formulation, maybe. Before you get to primary purpose, and this Court has consistently applied it to law enforcement actors, when you talk about private persons, I think that is an easier test, coming from this as a boots-on-the-ground trial prosecutor and trying to predict the way that primary purpose test is going to be applied. I would suggest the private party analysis as a first step would lead to more predictable results. Certainly the child, 3-1⁄2 years old, is incompetent to appear in court as a witness. How can the substitute be permissible? If the child is incompetent to testify in court, why isn't the child incompetent to testify out to make the same statement out of court? Respectfully, Justice Ginsburg, I think it would be a mistake to say that his incapability is incompetence for purposes of the courtroom setting means that nothing he's ever said on planet Earth could be taken as a reliable statement. Any parent knows that talking to their 3-year-old, certain things they say can be relied upon. The Ohio rule, Evidence Rule 807, which is modeled, I think, off of this Court's opinion in Idaho v. Wright somewhat, applies very rigorous factors to determine reliability. And so I think the choice for a prosecutor is not between live testimony and hearsay. I think when you deal with a 3-year-old, it's a choice between hearsay and nothing. Scalia. Well, that goes to the hearsay rule. I mean, you could have an exception to your hearsay rules. But how could this child ever have the intent that Justice Sotomayor described? Which is the test of whether particular evidence is testimonial or not. How could a 3-and-a-half-year-old child have that intent? I don't think he can. And I think looking at this Court's emphasis in both Davis and Bryant on the declarant's purpose, if you view it from that standpoint, and in Crawford's requirement that the person bear testimony, he's just incapable of doing so.  Well, they can talk about testimonial, and I think we should. I don't want to take the argument in another regard. Suppose that this is not testimonial. Suppose you prevail on that. Isn't there still a question as to whether or not this is hearsay that is so unreliable that it violates the Confrontation Clause slash and or the Due Process Clause, and we remand for that? If we rule in your favor that this is not testimonial, at the end of the case, the statement comes in, or do we remand? Or is it before us to say, Part 2, we think this is inadmissible under other hearsay principles that are so well settled that it's a violation of either the Confrontation Clause or the Due Process Clause? I don't think the reliability question is one for the Confrontation Clause. I do think the reliability question is one for the Due Process Clause. And so if the And has that been addressed here or is that still open? I think that's And would we remand for that? I think that's still open. And if you have a situation where the States are designing their rules for the deliberate purpose of avoiding having live witnesses come to court, a sham rule, that would be a very arbitrary rule under the Due Process Clause. But I don't think the Confrontation Clause is what that was designed to address. Certainly What about the Due Process Clause? Do we do we have have we adopted hearsay rules under the Due Process Clause? Not that I'm aware of, Justice Scalia. I thought it was up to the States. Let it in and let the jury take it for what it's worth. I'm not sure we've ever What I meant to say, and I think this Court did say this in Crawford, was that the reliability question is one for the States and their democratic processes. And they should have some leeway in formulating their hearsay rules. And so unless the hearsay rules themselves rise to the level of a due process violation, the reliability question, as this Court has explained, is not for the Confrontation Clause. Otherwise, I think we're backsliding towards the Ohio v. Roberts analysis and the constitutionalization of all hearsay rules. Mr. Amaya, can I go back? Or of some hearsay rules. Sorry. Can I go back to what you said before in answer to Justice Scalia? I mean, we can obviously all agree that 3-year-olds don't form any kind of intent to make testimonial statements. But that would suggest that the Confrontation Clause just doesn't come into play at all with respect to any people with diminished capacity, without the capacity to form that kind of legal intent. And that seems not right to me, that it seems as though there ought to be some other inquiry that substitutes for the intent inquiry when we're talking about people with diminished capacity. In order to decide whether a statement that they make is testimonial. If you disagree with my formulation that private parties is the first step, this Court has consistently said that there's three key inquiries. The intent of the declarant, I think, has been this Court's focus, but also the intent of the questioner and the circumstances of the questioning. And at the outer margins, I suppose, there could be a situation where the intent of the questioner might tip the balance, but in this case, the Ohio Supreme Court seemed to put all of its emphasis on the possible speculative intent of the questioner, and I think that's fundamentally wrong. If the intent of the declarant isn't to do anything other than respond to the basic questions asked, like the declarant in Bryant, like the declarant in Davis, I don't think you have testimonial evidence. Sotomayor, you're forgetting the circumstances, the prong of it. Were the questions here by the interrogator for purposes of law enforcement or were for the purposes of the ongoing emergency, the abuse of the child? Here, I think the intent from the questioner's standpoint, the teacher, was just simply that. And I think a helpful way to look at this, Justice Sotomayor, is to remove this reporting requirement and ask if the questions would be any different. And I submit they would not. These are just the basic questions that a teacher would ask when a 3-year-old comes to school with a bruised face. It's a concern the teacher has for their student. And to say that that teacher is stepping into a role of a law enforcement officer, I think is just as bad. Sotomayor, that goes to reliability, and that goes to whatever the finder of fact, whether they take that approach or they take another. But the point I think that Justice Kagan is making, in deciding the intent of the declarant, you have to look at what everyone else is doing and who they are. Well, I think that it may go to reliability, but more fundamentally, it goes to the function that these actors are performing. And if these aren't law enforcement people, if there's no direction by the police, this is just a teacher and student. Well, suppose this, Mr. Meyer. Let's take the diminished capacity out of the equation. Let's just presume a 13-year-old kid rather than a 3-year-old. And a 13-year-old kid comes in with welts or bruises or whatever it is, and the teacher says to the 13-year-old, listen, Joe, I want to know what happened, but I want to tell you that I'm under a statutory reporting obligation, so everything you tell me, I'm going to tell the police, and I'm going to write down everything you tell me just so I can get the facts straight. Would you think that that is testimonial such that it's a violation of the Confrontation Clause if that comes into a case without the opportunity for cross-exam? It may be. And if I could explain, if both the intent of the questioner and the intent of the questioner is that in some way this is going to the police and the circumstances of the discussion is for the police, that's a much closer question. And I would think that's a much closer question. Kagan. But that, it seems to me, then, is then it suggests that the way to do this is actually more the way the SG suggests, that we should just ask in every case whether a statement is testimonial rather than to draw the very sharp distinctions you want us to with respect to private parties. Well, I think the Solicitor General and Ohio's opinion are harmonious in that they agree in their brief that in almost every circumstance, a private discussion is not going to be testimonial because it's just not for law enforcement. And maybe the better way, if the Court agrees, is to view it as a threshold determination before you even get to the question of purpose. And I would agree at the outer margins of some of these hypotheticals, you have to look at purpose to sort out difficult facts, to say that, like the Ohio Supreme Court did, we just look at the foreseeability of the statement reaching law enforcement is fundamentally wrong. Everything that you see in life that you might have to testify about as a private person may make its way to law enforcement, but that's not the intent, I would submit, of the framers when they adopted the Confrontation Clause. Ginsburg. Could you remind us, the other people who heard this child's utterances, did their statements come in, the grandmother? Was it the grandmother, the aunt, the social worker, and the police? What happened to their statements? Justice Ginsburg, the Eighth District Court of Appeals, those statements did come in at trial. The Eighth District Court of Appeals ruled that their admission violated Ohio Evidence Rule 807. And so while they were heard by the jury, they were not, according to the intermediate Ohio appellate court, proper evidence. But the teachers didn't violate. The teachers, there was a hearsay exception. Is that right? The Eighth District analyzed the teachers' statements exclusively on the Federal constitutional question. There was no discussion of Ohio Rule 807. Ginsburg. Well, then, if all the others were inadmissible under Ohio's own hearsay rule, why wouldn't the same thing apply to the teacher? What's the difference between the teacher and the social worker? Well, first off, Justice Ginsburg, I think this is a purely Federal constitutional question. But if you look at – if this were to be remanded to the Eighth District for consideration of that issue, you would have to, and the Eighth District would be required to, look at very specific factors that I think distinguish the child's statement to the teachers, to those of the social worker and the police the next day. The teachers asked the questions very close in time to when the injuries occurred. It was within hours. They also asked very open-ended questions. There were only two real questions, who did this and what happened. These are all factors you can look to to assess the reliability of the statement under Ohio Evidence Rule 807. But more fundamentally, both the Eighth District and the Supreme Court of Ohio have said as a per se matter, these are testimonial statements, and that we disagree with. I would ask to reserve the balance of my time for rebuttal. Thank you, Counsel. Ms. Eisenstein, welcome. Mr. Chief Justice, and may it please the Court. The Ohio Supreme Court did err by viewing the teachers here as equivalent to police. And if I could turn first to Justice Sotomayor's concern there, I think that it is significant that these were teachers and not police officers, teachers who were not acting as surrogates for police, but in their normal, ordinary role as care providers for this child. Teachers aren't in the business of prosecution. They're not in the business of collecting evidence. And as such, this Court can generally presume that when they inquire of their students as to how they got hurt, they are asking out of a concern for welfare, safety, and out of their normal, routine role, not as a means of collecting evidence. It's also significant that when you take away and you strip away that view of the teachers as equivalent to police, the conversation viewed through that lens takes on a very different character. Instead of scrutinizing each question and answer to determine whether this is an emergency on the one hand or whether it is a need to address a criminal violation, instead, there's a whole range of reasons why these teachers, out of care for the student, would be asking what happened and how the child got hurt. And fundamentally, the type of fluid, informal, spontaneous conversation between the teachers and the students is far from resembling the type of core confrontation clause testimonial statements. It lacks the type of formality, the solemnity, and it also reflects that the teachers were addressing a present purpose in trying to understand how this child was injured. But what happens, Ms. Eisenstein, really along the lines of the hypothetical that I gave to Mr. Meyer, where it's pretty clear to both the teacher and the student that back of that conversation is the presence of police? In other words, the teacher will say, I'm under a reporting obligation, or maybe the kid will bring it up. If I tell you, does that mean it's going to the police? And the teacher says, yes, it does. You know, what happens when that arises? Eisenstein, Justice Kagan, I think that is a much harder case for two reasons. One is, from the declarant's perspective, which is where I believe this Court generally starts, the declarant is now recognizing that this teacher is essentially a direct conduit to police in a way that the 3-year-old child here certainly did not. And secondly, the teacher is expressly recognizing her role as, in some respects, a surrogate for police. Now, not in all respects. And that's, you know, an important point as to one of the special concerns with prosecution and police questioning, is that there is an additional concern with the police that they may, for one thing, shade the nature of the conversation. It's also a concern where there's a level of structure and formality that simply the conversation would tend to resemble testimony or the taking of evidence. None of that would be present in this kind of informal, spontaneous interaction between a civilian who, frankly, the teachers who initially questioned the student and elicited the statement that Dee did it, did so prior to their supervisor recognizing an obligation to call in. And even then, in your hypothetical, one further distinction is that the teachers here and the obligation here was to call social services, not police. While it certainly may have been foreseeable from an objective standpoint, whether there was the subjective view here. Ginsburg. I thought it was either that the school teacher could notify either the social worker or the police. Yes, Justice Ginsburg. They can notify either. But when the police are notified, then the next step is for the police to call in social services. And the first responder and the agency charged with investigating primarily child abuse, especially in the very immediate moments, as was the case here, is the welfare agency, the social services agency, not the police. Kennedy. Just so I have it clear, social services, if they're selected to get the information, I assume they have the obligation to advise the police. Am I wrong about that? In terms of there is a cooperative structure, at least under the Ohio statute, and nationally in these reporting structures. Is there a legal requirement in Ohio that social services report to the police? I'm not sure the extent, Justice Kennedy, of the sharing of information and the degree to which social services in this particular statutory scheme must report all information to police. But would I be right to think that where there's any kind of serious injury, police are involved as a routine matter? Well, Justice Kagan, I'm not sure about that. At least one of the amicus cites that in a majority of cases of reported child abuse, it is social services alone who investigates the case. Clearly in this case, the police got involved. But I do note that the police did not get involved until two days later, when the second social worker came to the house and discovered a much more serious circumstance than was presented initially at the daycare. Alito There can be a lot of circumstances where a person seems to be under a threat. Maybe that may have been hurt. Seems to be under an ongoing threat. Someone questions that individual. And the person who makes the statement, as well as the person who asks the question, may have in mind immediate safety concerns and also the possibility of criminal prosecution. How realistic is it to try to break that down and determine which of the two is the primary purpose? I think that is a challenge in the test, but it's less challenging in the context presented here, where you have an ordinary citizen questioning a small child. It may be a more difficult circumstance in the cases like Brian and Davis, where you have police who have a duty, one of their primary duties, to collect evidence and forward a prosecution to try to parse that out. I think this Court can comfortably believe that it is the hearsay rules that should govern the interactions at issue here and not be governed by the Confrontation Clause. Roberts What if you had, maybe this is just a specific example of what Justice Alito is talking about, but what if you have the teacher, you know, who did this to you, D, the teacher knows there's nobody in the immediate vicinity named D, and then she asks, well, has he done this before? I mean, is that something that's not subject to the Confrontation Clause? It's not related to the immediate concerns or immediate safety, but it seems to be designed to compile a case. Well, Your Honor, to the extent to which the teacher is asking that question, I think that one of the presumptions here is that it's not to gather, to collect evidence for a case, because she's not thinking police prosecution, and there's good reason why. Well, how do you know that? Maybe she, you know, we've got to protect the child. The way we do is to get the person who did this locked up. So she wants to confirm who is it. She doesn't need to know that for the immediate safety of the child. I mean, I'm sorry. He wants to know whether he's done it before. The immediacy here is not whether — I understand your hypothetical, not immediate in terms of at the school, but in this particular case, there is the immediacy that, as was the case here, the defendant was the one who picked up the child and took him home at the end of the day, leaving him, as it turned out, in a far worse position when the social worker finally tracked him down. So that is often — I think that's one of the motives, frankly, for these mandatory reporting statutes, is because of the recognition that there is an urgency involved when children — when there is suspected abuse. And so — Kennedy, what am I supposed to do, what are we supposed to do, if we think 50 percent of the motivation was to comply with the statute and her duty as a teacher, not to send this kid home, and 50 percent was in order to fulfill the reporting obligation of the police, then what do we do? Well, Your Honor, I think you still have to look at the three parts that this Court has addressed, the declarant, the questioner's intent, and the circumstances. And this Court has looked at those in tandem. And when you look at the perspective of the declarant, which the Ohio Supreme Court, in my view, erred in ignoring, he's not going to see his daycare teacher as an evidence collector. And when you look at the circumstances, like the circumstances here of a spontaneous and informal encounter in the classroom, it has no resemblance to the type of abuses the Confrontation Clause is meant to address. Are there no further questions? Thank you. Thank you, counsel. Mr. Fisher. Mr. Chief Justice, and may it please the Court. We are not here today asking for any sort of rule that would ban prosecutors from using statements like LPs in criminal prosecutions. All we are asking for is for the State not to be allowed to have it both ways, introducing such evidence while at the same time prohibiting the defense from any form of confrontation whatsoever. And you don't have to look any further than the facts of this case to see the grave dangers that such a system would present to the accuracy of criminal prosecutions. I'm looking at the judge said this witness is not, this child is not competent to testify as a witness. And you've read the transcript. How can there be a question of cross-examining a 3-year-old? This person is incompetent as a witness because the testimony is unreliable? Well, two things, Justice Ginsburg. Remember, first of all, the State is taking a position by necessity under its own hearsay law, Rule 807, that what the State said, I'm sorry, what the child said when he was in effect interviewed by the teacher was particularly likely to be trustworthy. And so it seems to us quite impossible for it to take the position that 6 months later the child cannot, in the words of the Ohio Evidence Rule 601, quote, relate to events truly. So we think it's utterly incompatible, Justice Ginsburg. Ginsburg. Just let me stop you, part of your answer I don't follow, because one thing is the child is asked immediately on the spot, close in to the time when this occurred. The trial is months later, and one of the problems with 3-year-olds is they don't remember. Well, that is an issue. Of course, the Course Confrontation Clause jurisprudence squarely holds that even if a witness has difficulty with memory, that does not impede confrontation or defeat the defendant's rights to confrontation. But I think you're also asking, you know, what good would cross-examination do in this setting? And so let me answer that in two ways. First of all, there are innumerable reasons, and perhaps, Justice Kennedy, when you talked about reliability, some of these were in your mind, as to why we might doubt the veracity of LP's initial statements. The teacher herself said, I'm not sure he understood me. She fed him in a line. Is it D? Is it D who did it? The child LP knew that his three older siblings had already been removed from his mother's custody because she had abused them. So he would have had an incentive and knowledge of how the system worked when he was answering that question. So there are numerous reasons we might be very concerned. All we're saying is that you fed him a line. I understood that she asked him who did it, and he said D, and she didn't know what D meant. Yes, she said D, D. Is it D who did it? That's what I meant, Justice Sotomayor. Well, but it wasn't as if she got D out of thin air. Fair enough. Fair enough. But if I could turn back to, I think, the other thing you're asking, Justice Ginsburg, is how would cross-examination be useful here? And let me be clear. All we're asking for is something, more than nothing. You know, the State itself, after getting the allegations from the teacher, the social   And I'm going to have to ask my ex-child myself to see whether this was true, to see whether it was believable. That's all we want. Let me ask you this question. Suppose I'm in State X, not Ohio. There's a mandatory reporting duty to the social services by the teacher, and it's the same facts. And I'm the trial judge. And this statement is offered, and I say, does the defense want to examine the 3-year-old or the 4-year-old and provide some means two or three months later, two or three months after the D statement, to cross-examine the child, maybe in the clinical setting that you suggested in your brief? Any problems with that? If we're saying what the rules should be in that kind of situation, in that kind of State, what guidance can you offer? I think you would start with Maryland v. Craig, where the Court has held that confrontation of children can be more flexible to accommodate child's perceptions, understandings, and abilities. In that case, the child was held competent as a witness. That's right. Now, remember, competency is a creature of the State's own making. Many other States, and we've provided an amicus brief from three illustrative States, Arizona, Iowa, and Connecticut, like many others, deem all children competent in this setting, at least competent to give testimony. We think that's a much better rule, and it gives me back to Justice Kennedy's question, I believe, which is we think it would be perfectly acceptable to have testimony, if necessary, in a proper finding for maid taken outside of a courtroom, perhaps even through an expert. I think a very strong argument could be made, if it were necessary to be made to this Court or any other, that if by interviewing the child outside of a courtroom in a more therapeutic setting is more likely to be able to enable the child to tell his story and to answer questions, then that's what confrontation is all about. But if that happened, would the statement to the teacher come in? Yes, of course, because once you have confrontation, then you can bring in any prior statement. And that's the essence of our position.  Ginsburg. But by confrontation, you mean the defense you have a therapeutic expert, but it's the defendant's witnesses. You're not – I don't think you suggested that the Court could appoint its own expert and the defendant would be out of it. I mean, this is the way we do things in our adversary system, is you're a partisan expert, you're the defense expert. Well, Justice Ginsburg, I think the defense would have to have some inclusion in this questioning. We cite an Arizona case in our brief where a child interview specialist conducts the interview, but she has an earpiece with the defendant's lawyer in another room that's able to direct questions for her. So I think the defendant would have to be participating, but I'm not sure it would be an irreducible requirement that the defendant's lawyer be asking questions. Mr. Fisher, I want to go back to your basic premise. I know that you're attacking the competency question a lot, but what is it about this statement that makes it testimonial? Is it the rule that the State – that she's a mandatory reporter, as the Ohio court thought? Tell me what you think. Is it any out-of-court statement? What is it that makes it testimonial? Fisher, Well, you start with the rule the Court laid down in Davis and repeated in Bryant, which is if the primary purpose of the statement is to establish or prove past events potentially relevant to a criminal prosecution, then you have a testimonial statement. And I think a helpful way to analyze this particular statement is to start with Justice Kagan's hypothetical. If the teacher had said to a student, and as in this case, there's nothing spontaneous about what happens here, pulls the student aside and says, I need to know, tell me what happened and who did this so I can tell the police. I think the other side, if it almost conceded, that would have to be testimonial. But on the facts of this case, that is, in fact, precisely what you have when you conduct a proper objective totality of the circumstances. Alito There's an awful – a great distance between Justice Kagan's hypothetical and what happened here. First of all, there's the age of the declarant. Do you really think a 3-year-old or a 3-and-a-half-year-old can have any conception that the thing that the person, that this child is saying is going to be used in court to prosecute somebody for a crime? Fisher No, Justice Alito. I don't think it's – Alito So the declarant is out. And then you have the teacher, and the teacher isn't saying anything about gathering evidence for a criminal prosecution. I would think the first thing on the teacher's – I don't think the teacher probably broke it down that way. The teacher is concerned about the safety of this child, period. Fisher Can I say one more word about the declarant? Alito Sure, yeah. Fisher I'll respond to you about the teacher. I absolutely concede that a 3-and-a-half-year-old doesn't have sophisticated knowledge of how the criminal justice system works. But I think a 3-and-a-half-year-old does understand when he's asked whether somebody did something wrong to him. Again, remember that L.P.'s three older siblings had all been removed from the home already for his mother's abuse and neglect. I think he would have understood he was being asked – Sotomayor That's a big assumption to know that this child understood the criminal process at 3 years old. Fisher I – Sotomayor And when – how long before had the children's been removed? Fisher I didn't say criminal process. And all I want to make the point is, is that if we're going to adjust for the age of children, we also need to adjust across the board. And I think it would be enough, to the extent we're looking at the declarant's purpose, to understand that he was being asked to make an accusation of wrongdoing. Now, turning to the teacher's purpose, I want to talk about four things that are very important. First, the nature of the injuries. Second, the teacher's training. Third, the teacher's actions. And fourth, Ohio law, because when you put them all together, you end up with the effect of the teacher having quite clear understanding of where these statements were going to be used. First of all, the injuries. Ginsburg I would like to ask you, before we get to your four points, it just seems to me that a teacher looking at a child who has been abused, the first reaction of that teacher is just as Justice Alito suggested, get that child out of harm's way. Don't give that child back to a potential abuser. So the teacher, I would think, is not thinking about prosecution down the road. What can I do to assure the safety of this child right now? Fisher Right. So I think that does lead me right to what I was about to try to say. First of all, the injuries were very serious here. And the teacher quite well knew that they didn't occur in the classroom. They had occurred outside the classroom. And so one of the teachers testified only once over the past year. Sotomayor Why did the teacher bother saying that she wanted to make sure that it wasn't another child? Fisher The teacher never testified to that, Justice Sotomayor. The closest you have is the quote the State pulls from JA 60, where the teacher said, I asked whether D was big or little. But the teacher in the very same paragraph of testimony says the reason why she asked that question is she was wondering whether it was an older brother or sister. So if the teacher knew it wasn't something that occurred in the classroom, of course, LP had just gotten to school. And as I'm trying to say, one other teacher had said, only once in nine years had we seen something like this. So secondly, that leads me to the teacher's training. We've cited to the reference for educators that Ohio gives to all teachers. It's at page 37 of our brief. And the teachers are told to look out for child abuse. They have a special duty to look out for child abuse. And when they see it, they're supposed to, and I'm going to quote page 31, they're supposed to gather, quote, information which might be helpful to establishing the cause of the abuse. They're told to gather information that would be helpful to establish the cause of abuse. So she is gathering evidence. That's what she's told to do. And, quote, the identity of the perpetrator. Later on in that reference guide, it tells the teacher that a local prosecutor will then decide whether to prosecute. And then understanding the perpetrator. Ginsburg. Is this child going to be returned to this person who the child has identified as? It seems to me that there is a concern immediately with the child's safety, and there is also down the road the potential prosecution. But if you have to divide what is the prime purpose, it seems to me that the well-being of the child has got to be the first thing in the mind of the teacher. And what Justice Ginsburg has said is completely consistent with your number three. She wants to find out the cause. She wants to know if there's something happening at home where this kid should not go back home that day. That's right. We don't dispute that the teacher has a protective purpose partly in mind. And I think it's absolutely natural that the teacher would. But the problem is, in our position, is that is inextricably intertwined with criminal prosecution as well. That's what the Ohio Supreme Court said construing Ohio law, is that one of the chief methods of protection is prosecution. That's too late. Well, it might be too late, but Justice Ginsburg, it doesn't make it that much different than the situation you had in Hammond involving domestic violence. It doesn't make it that much different than a situation you have with a police officer or someone else trying to get a drug dealer off the corner to try to get a white-collar criminal to stop embezzling money. All of those things are ongoing crimes. But gathering statements that help both stop the harm that's occurring and useful in the criminal justice proceeding, we think, still are testimonial when that criminal incentive and purpose is intertwined with the protective purpose. Even my adversary, I think, acknowledged that even if it were nothing other than the teacher trying to get information for protective purposes, that is, removing LP from the custody of an abuser, that's a civil case and civil process which I wholeheartedly agree would still trigger the Confrontation Clause. Mr. Fisher, in Davies, when an abused woman is separated from the abuser, she can voluntarily say, I don't want to go back. She can make her own choices. How does a child make those choices? Fisher, I think it's – obviously, it's more difficult, Justice Sotomayor. I think the true dynamics of domestic violence don't make that choice terribly  Sotomayor, I know for many women it's not – they don't perceive it as a real choice. I'm not naysaying that. Fisher, right. But there are other – Sotomayor, but I think there is a difference in terms of protecting a child and protecting an adult. Fisher, there are differences, but again, I would give you my drug-dealing-on-the-corner hypothetical. There are numerous innocent victims that are going to be harmed by the distribution of those narcotics until the person has taken off the street. But we don't, therefore, say that when statements are gathered to do that as quickly as possible, that they're nontestimonial. Alito, let's suppose that everybody who could have possibly done this to the child was immune from criminal prosecution. They're all diplomats. They all have diplomatic immunity. Would the teacher have done anything different? Perhaps not, Justice Alito. I'm just not sure what that tells us, because even if the teacher was gathering evidence for a civil legal process, then I think you still have a testimonial statement. Confrontation clause applies in civil cases. Well, it applies in the same way Justice Scalia was averting to earlier, I think. If somebody made a civil deposition, I think that the confrontation clause doesn't apply in that setting, but if the statement were tried to be used later in a criminal prosecution instead of testimony. No, but all these people, they're immune from prosecution, from criminal prosecution. Would the teacher have done anything different? I'm not sure she would. They would have. Well, that would be the end of the question, isn't it? I don't see why it is. Because then the teacher has no purpose of gathering evidence for use in a criminal prosecution? Well, the purpose is gathering evidence for use in serious legal proceedings, and I think that would be enough if I had to make that argument. I don't have to make anything like that argument. Let me tell you now about Ohio law that's hanging over this interaction. And, Justice Kennedy, you asked about the social ‑‑ the relationship between social services and the police. Ohio law quite explicitly and unambiguously requires the social services agency to share information of any possible abuse, criminal abuse with the police, and also the Cuyahoga County's own guidelines, which we cite in our brief. So there's no doubt those two things are intertwined. And secondly, the mandatory reporter statute, along with Ohio Rule 807, expressly make these statements admissible in criminal court proceedings. So you put all this together, and it's ‑‑ I just think it's frankly undeniable that the criminal process is hanging over this. And so really the only hard problem, as I think the one Justice Ginsburg is asking, is how do you disentangle that or how do you weigh that against the protective purpose which the teacher must have had as well? Mr. Fisher, can I ask a question that steps back a little bit? Because it seems to me that the strongest part of your case goes something like this. This is a statement that's going to come in and is going to have great consequence in a trial. It's going to function as the most relevant kind of testimony imaginable. It's an accusation. In a case like this, there are two potential parties that could be accused. Essentially, this is fingering one of them. And it's being done by a 3-year-old. And the question of whether that's a particularly reliable way to choose between which of these two potential people did it is like a little bit scary. And then you're not being able to question it. You're not being able to do the things that you normally do. Okay. So all of that seems to me that's your strongest case. And it seems to me that it doesn't fit very well with the test we have and with the questions that we're supposed to ask. In other words, all of what I said seems to be, or most of what I said at least, seems to me kind of irrelevant to the question that we ask under the primary purpose test. And what do we do with that lack of fit? I think I can answer that question while also going back to the question I posed before you asked the question, which is what do you do when it's too difficult to pinpoint a purpose? The Court has also described in its cases the very helpful inquiry of whether the thing, the statement when it's introduced in court functions as an in-court substitute for trial testimony. That is exactly what the testimonial test is designed to answer. And I think part of the power of the ---- Kagan. I don't think it really does. I mean, the way I've always understood the primary purpose test is that it's not whether it functions at trial as testimony or how the jury understands it. It really is how the declarant understands it, maybe leavened by some, you know, what does the questioner think and what are the circumstances. But it seems to be mostly about the purpose of the person who's making the statement, which fits, you know, not very well with these kinds of concerns that you're talking about. Well, I think the linkage between the two is that when a statement is made outside the courtroom for the primary purpose of establishing facts that might be relevant to a later criminal prosecution, then when it's transported into the courtroom, it does perform the substitute of trial testimony, which is exactly why you so accurately said there was such power in this statement. The prosecutor at closing said just as she would have said if LP had taken the stand. She said when this child of 3-1⁄2 years old is asked who did it, she said D did it. He said D did it. And so the way the prosecutor presented it to the jury was as a precise, perfect substitute for in-court testimony. And it's not, I think, disjointed from the fact that outside the courtroom the statement was made to establish a fact relevant to prosecution. It's difficult ---- So the test you just gave us seems to me to encompass all hearsay, doesn't it? No. I think a jury would view a stray remark to an acquaintance, as the Court has put it, as a piece of evidence, relevant evidence perhaps, but not as testimony. It wouldn't make sense to describe somebody's, I think this Court has put it this way, somebody's stray remark to an acquaintance or somebody's cry for help later on as somebody's testimony. But here, this is exactly LP's testimony. That's what it is functioning as. And if I could turn to one other piece of Ohio law that I think is important to have before you. We've talked about Ohio rules of evidence. They're both, both the relevant rules are in the appendix to our red brief. On 2A, it is Ohio Rule of Evidence 807. That is very unusual, and, Justice Kennedy, you were asking earlier about this, I think. First of all, this is a rule of evidence that no State had any rule of evidence like this until 1982. This is a brand new thing that came up only after Roberts. And the entire purpose of this law is to gather out-of-court accusations and to use them as a substitute for trial testimony. So let me point you to two aspects that show that. First of all, the only thing that the state, that the hearsay law gathers up are statements, quote, describing any sexual abuse or physical abuse directed against the child. So the sole target of this hearsay law is to get out-of-court accusations of criminal conduct. And then, odder yet, looking at the first sentence, it says an out-of-court statement made by a child who is under 12 years of age at the time of trial making such an accusation. Ask yourself why the words at the time of trial are in this hearsay rule. If it were designed to pluck out reliable statements from the world, it ought to be asking some question about the world when the statement was made. But it's conditioning admissibility on some fact at the time of trial, which is still further evidence that what Ohio is doing is gathering up these statements to use them as a substitute for in-court testimony. And so the pedigree of this hearsay rule, in contrast to innumerable other well-established rules that the Court has dealt with in the past, show the problem here. And even Justice Thomas has talked in his separate writings about, you know, a state system that would evade the confrontation right. If there's ever a state system that would evade the confrontation right, it's taking this rule and then coupling it with Ohio Rule 601, which automatic — which presumes that all children under 10 are incompetent to testify. So it's telling the State, you can — you can gather up selectively these out-of-court accusations using the reporter requirement, teacher training, all the rest, and then you can go into court and introduce those statements and at the same time completely bar the defense from any form of cross-examination whatsoever. The defense has no right to compulsory process. He has nothing. And, Justice Kagan, you asked about the facts of this case, and this is where I was speaking at the beginning. I don't know if you could have a more vivid example of the true danger of a wrongful conviction than the facts of this case, whereas the Ohio court of appeals said the only direct evidence are LP's statements. And LP is found incapable of relating true events. And the circumstances under the statement — under the making of the statement that I described give you great — I hope would give the Court great pause before condoning a system. And I want to emphasize that word system that would allow convictions like this, because you don't have to look further than the back of our red brief where we reference the Texas Attorney General's own manual that is issued to teachers. Under Texas, they already have the rule that, in effect, Ohio is asking for here. Statements that are made to social workers and police officers are deemed inadmissible. But statements first made to teachers are not. And so what does the Ohio Attorney General's office tell its teachers? Please gather up as much accusatory evidence as you possible — as you can — as is possible. Otherwise, important testimony might be lost. So you have already a system set up for prosecution by out-of-court statement, out-of-court accusation. And that is exactly what the Confrontation Clause is designed to — to prohibit. And believe me, I understand the Court, when it gets down into the weeds of the primary purpose test, and says to itself, boy, it's really hard to — sort of looking in a vacuum to ask what is the primary purpose here. But if you have that difficulty, draw the lens back a little bit and ask yourself whether this prosecution comports with anything relating to the spirit of the Confrontation Clause. I submit to you, I just don't see how it can. Let me put the point another way. I know that, obviously, in some of the more recent decisions applying the Crawford case, some of the justices on the Court have developed some misgivings about the full breadth of that decision. But I want to really forcefully tell you, this is not the case to cut back on Crawford. If you applied the old Roberts regime, it would be an absolute laydown for me and my client because of the unreliability of the statement, as Justice Kennedy has noted. So it's not Crawford v. Roberts that's driving the discomfort here. I really think that if anything is driving the discomfort here, it's the discomfort we have with putting this young child on the stand and — Kennedy. But doesn't that indicate that the testimonial inquiry is somewhat awkward and formalistic? No, Justice Kennedy. And there's — just to follow up on this, almost the same way, that there are States in which every citizen has a — has a duty to report abuse. Is that not correct? That is correct. It's not Ohio, but it is correct. But we don't rest our case solely or even primarily on the mandatory reporting requirement. There's the whole constellation of other facts involving the injuries, involving the teacher's training, involving Ohio law, the way it's written, and the like, that makes us far different than any other ordination. I'm going to use the primary purpose test at all. Maybe it doesn't fit as has been suggested. But one of the information that a few of the briefs conveyed is that in most of these cases, the abuser is not criminally tried. There's an attempt to provide for the safety of the child, and maybe there's family counseling, but in most cases, a criminal prosecution is not waiting at the end of the road. Let me say two things, Justice Ginsburg. First, that's because most cases don't involve injuries as serious as this. My client got 30 — almost 30 years in prison because of the seriousness of the injuries here. And so I don't think there was any — any possibility this wasn't going to be a criminal prosecution. And in fact, the Cuyahoga County guidelines that we cite tell social workers to divide up cases between the really serious ones and the less serious ones. So criminal prosecution is the really serious one. But even if — even if I took your premise to apply even on facts like this, imagine a State that said most drug cases we're going to put into a non-criminal diversion program. I can't imagine, then, that it would take — that that would take statements alleging drug use or drug possession or drug dealing out of the realm of the Confrontation Clause, because everybody would know that criminal prosecution was still intertwined with that system. And I think that's where I would leave you, is that if you struggle with the primary purpose test here, look at the overall setting and look at the way this is used at trial. Breyer. To be fair to you, it's — I don't think the misgivings come so much from — they come from the fact that you don't want — I don't want to see the Confrontation Clause swallow up the 30 exceptions to the hearsay rule, and therefore you have to draw lines. This case is tangential. This case involves tragedy either way. It's a tragedy to abuse children. It's a tragedy to put the wrong person in jail on the basis of unreliable testimony. Now, with that kind of tragedy, it seems tailor-made for the Due Process Clause, allowing States to experiment, allowing the bar to work out some of the things you say. What's at issue here to me is the problem of not having that Confrontation Clause swallow up the 30 exceptions which are necessary in many instances for the justices of a trial. That's at a general level, since you asked. Yeah. No, please, I'm glad. Justice Breyer, that, I hope, gets me back to Rule 807, though, is that that shows the extreme, unusual nature of the hearsay law at issue here. So we're not doing anything that would touch other hearsay laws. Those could be other Crawford cases down the line. So you have a highly unusual hearsay law designed to evade the Confrontation Clause. But you haven't raised the due process argument. We haven't expressed that. This is not a longstanding traditional exception to the hearsay rule. No, it's not. All right. Whether this would or would not be an excited utterance is another issue altogether, under – depending on how strict the State defines that. But that's also part of why you're fighting the unreliability here. But you're not raising the right challenge. Is this really Confrontation Clause? It's really Confrontation Clause for all the reasons I've said about the objective purpose of the statement made outside the courtroom to partly aid the criminal process in the way it was used in the Court. And, Justice Breyer, I agree with you these are tragic cases. All I'm asking for is that before you put somebody away for 30 years, give them at least what the State has. The State itself is already conducting interviews of these children in advocacy centers or with their own personnel. Give the defense at least the same opportunity. It's no additional – it's a marginal additional effort and trauma on the child. And we do a long ways to protect against these kind of wrongful prosecutions and convictions. Roberts. Thank you, counsel. Mr. Meyer, you have five minutes remaining. Thank you. One key point of disagreement I have with my colleague is the issue of Ohio law. And specifically, Ohio law does not impose upon any mandatory reporter a duty to investigate. And if it did, I think that would be a fundamentally different analysis, because the kinds of abuses this Court has told us the Confrontation Clause was designed to address are government abuses. And where you have a situation where mandatory reporters, who are simply people who interact with children in their day-to-day lives, are required to report to the social services agency of what they learned just going about their business, that is fundamentally different than, let's say, the Marion magistrates who are going out collecting affidavits and submitting them in criminal trials as evidence. So in Ohio, the teacher satisfies his or her duty by just phoning social services and saying there's a kid with terrible bruises in my class. Goodbye. That's it? That is it. Now, the issue came up, and I think it was pointed out, that you can also satisfy your duty by reporting the abuse to the police. The statute then, in turn, requires the police to notify children's services. So we have a regime that's set up to protect children. And I'd also point out that in many of Ohio's 88 counties, you don't have a children's services agency set up to go out and deal with these emergencies, let's say, in the middle of the night. You call the person who's equipped to deal with it, and that's going to be the sheriff most often. In response to the indication that the accusation is the most important component of this, I would say certainly there was an accusatorial element in the declarant in Davis. Even the victim, Covington and Bryant, as he lay dying, I think could understand that when he's telling the police that so-and-so shot me, there's an accusatorial element there. The Dutton case, which this Court referenced in Crawford, and the statement by the prisoner, if it hadn't been for that son of a bitch, Alex Evans, we wouldn't be here, that is an accusatorial statement. But that does not transform it magically into testimonial statements for purposes of the Confrontation Clause. Ohio's teachers, I think, are horrified to learn that the Supreme Court of Ohio views them no different than cops when they're talking to their children in their classrooms. That is fundamentally not the type of analysis that any court should be conducting when it comes to testimony, whether statements are testimonial. So in closing, I would reiterate my prayer for reversal and point out that this 3-year-old child, when these bruises were being described to his teacher, is just fundamentally unlike the treasonous conspiracies of unknown scope aimed at killing or overthrowing the king, which is the Sir Walter Raleigh case. It's just not the same. Thank you. Thank you, counsel. The case is submitted.